In re Tower Properties, LLC. Eric Bensamikin arguing for appellant, Rolf Wollner arguing for appellees. Okay, good morning. Mr. Bensamikin, did I pronounce your name correctly? I hope. May I ask if you'd like to reserve any time for rebuttal? Yes, Your Honor, I'd like to reserve eight minutes for rebuttal. Eight minutes. Okay, please go ahead. Thank you, Your Honor. Good morning. Well, this issue is really a question of reasonableness as it relates to an attorney's fee award for a motion to an unopposed motion to expunge a list pendants. Sunset Coast Holdings LLC was formed with a specific intent and they purchased certain litigation rights. This was a state court complaint that was removed to the bankruptcy court by the appellees, and we went through that file previously in the state court matter. There was a motion to expunge a list pendants and motion went unopposed. Subsequent to the granting of a motion to expunge a list pendants pursuant to CCP 40538, prevailing party is entitled to an award of reasonable attorney's fees. The appellees submitted their attorney's fees request in excess of $55,000. You know, 56 hours for a single unopposed motion to expunge a list pendants. When did they know it was unopposed? After they filed it, right? Yeah, of course. They have to file first and then we file an obligation. Okay, thank you very much. Please proceed. Right. Thank you, Your Honor. And so this question of reasonableness comes down to the bankruptcy court required to issue a finding. Was the $1,000 an hour plus billing of the two senior partners and a $660 an hour billing of a junior associate who had not yet argued a single motion in his lifetime warranted in this motion? And so the appellee makes great efforts to indicate that the costliness of this motion to expunge a list pendants has more to do with this particular property itself and the appellant's position is quite contrary to that because this was a procedural defect. We take full responsibility for that and understand that that's what happened. This went unopposed and that same procedural defect would be the same whether this was the Big Mount of Beverly Hills or whether this is a dirt lot in Fresno. Similar to the analogy that we indicated in our reply brief, if you're pitching on opening day or the last pitch of the World Series, the mechanism of winding up and pitching is the same. How about you're not gonna put the same pitcher on the mound? I mean, right? I mean, well no, but we're talking about a procedural mechanism. In other words, the analogy is I understand there's pressure in the World Series versus opening day and maybe a season where there's no fans in attendance or anything like that, but the procedural mechanism of winding up, stretching, and throwing the ball over the plate is the same either way. Well, my procedural mechanism for throwing a baseball is exactly the same as you know the late great Sandy Koufax. But the effect's a little different. Yeah, yeah. Counsel, what is the standard of review that we're supposed to employ in this instance? Well, to the extent the issue is whether the state law allows the attorney's fee, the review is de novo and that's per fri be done. But that's not an issue here, is it? You conceded that oral argument that they were entitled to fees under the statute. The only question is reasonableness. What is the standard of review for the reasonableness of the fees by us over the bankruptcy court's determination? It's abuse of discretion, isn't it? Yes, it is under the abuse of discretion. And further, there has to be a reasonableness of the hourly rate. If the court decides that it's going to accept the application that's been filed by Mr. Woolner's office, and the application contains an hourly rate, it contains the hours that were incurred, and the court says I'm going to adopt it, has it in fact then made the finding that's necessary for us to conclude there's evidence in the record to support the decision? No, because I think that there needs to be a rate and the amount of time. And what's particularly concerning in the very brief transcript of that hearing is the judge Russell's comments that, quote, this is not your usual motion to expunge all this pendants, given the history of this case. But history of which case? Because the Sunset Coast case is a very limited and straightforward case. And there is a tremendous effort on the part of the appellees to lump Sunset Coast into this group of prior bad actors, and trying to grab onto this property, and not letting go, and all this bad faith. And that may very well have been true with the prior participants of prior counsel, but not Sunset Coast. There is no sorted history in this case, and this is nothing unusual about an unopposed motion to expunge all this pendants. Let me suggest a different viewpoint. The reason why it's not just abuse of as any such thing can be, when we're looking at a judge's decision to grant fees and how much, for two reasons. One, the judge was there and watching the efforts in particular that generated the fees. Number two, the judge has the ability to view the entire panoply of events that, you know, led to the amount of the fees. And I think what Judge Russell was saying here is, I'm very aware of the background here, and I'm very aware that that makes this not your run-of-the-mill, you know, Liz Penden's expungement motion. Why is he wrong about that? I mean, why is that an error for him? Because it was a run-of-the-mill, Liz Penden's expungement motion. Then it's a factual matter, and unless he's clearly wrong, we have to go with him, right? I agree that, unless he's clearly established on the record as far as the necessity to require reasonableness, both as to the amount of time expended and to the fees chart. And traditionally, in California courts, the average motion to expunge a Liz Penden's, again, unopposed, so no additional work had to be done after the motion was filed. So an unopposed motion for Liz Penden's gets anywhere from five to seven hours at a rate of $3.50 to $4.50. If you're in Fresno. So let's use a case similar that we're all familiar with, like Enright Till, as an example by analogy. So we add a little bit, we sprinkle a little bit on top of that, because this is a property in Beverly Hills or this is a downtown LA law firm. I still think it's a far stretch to go from $4.50 to over $1,000 an hour, and you have two seniors and a junior on a simple unopposed motion. And that's what comes down to. If we remanded this for further findings by the judge, and he simply put on the record that I find that the rates that are charged were reasonable considering what was at stake with regard to this particular property, that hiring these counsel in this location made perfect sense, and that these people charge rates that are market rate, and that I find that all the time that they expended and included in their application was necessary. That would be sufficient for us to be able to affirm, irrespective of the arguments they can make. Correct? I can't, I mean, I can't disagree with that, and all I can really respond to that is by saying, but that didn't happen. There were no findings. No, he just decided that the application would be granted in full over your objection, and the application itself contained all of that information, didn't it? Yeah, and it set forth the time that was required. And whether that's reasonable, because that's a prong of the fee-granting provision of the CCP code section in question, and it has to be reasonable. And you raised that issue, though. You raised that question with him, and he denied your objection on that basis, didn't he? Well, no, he didn't squarely address any of the objections in any of the moving papers. He simply said, I've read the quote, I've read the papers, and so forth, but I am satisfied, and that's it. Satisfied with what? And then he went on to say, this is not your usual motion to expunge a list pendant. Why isn't it? What about this particular motion to expunge a list pendant? It's so far different than any other run-of-the-mill motion to expunge a list pendant, again, based on a technical filing defense. But didn't he also state that he adopted the arguments that were made in the application? I'm looking directly at the but I'm going to grant the application in full. So anyway, so far as this particular matter, this number 12, that concludes this hearing. Want to call the next matter. That's it. I thought he wrote, he said, I've read the papers and so forth, but I'm satisfied this is not your usual motion to expunge a list pendant. Given the history of this case, it's a little unusual, but I'm gonna grant the application. And then later, he said, and basically, I just stated on the record that I agree with all the arguments that the applicant, that the applicant and the order should just state that for the reasons stated on the record, that good cause has been shown and the application is approved. That's the full quote of what he said, isn't it? Right, and that flows directly after the line that I quoted. So there, again, there was no specific filing. There was no explanation. He said, I agree with the arguments of the application. The order should show the good cause has been shown. That relied on what the application suggested, didn't it? And you made arguments that the application should not be approved, and he didn't agree with them. I suppose what I'm really trying to say then is I don't think that the reasonableness factor was adequately adequately explained or theorized in the court. I don't believe he gave any, if he gave deference to any argument one way or another or considered, it simply wasn't played out. Again, I'm sorry, we're now under four minutes. I don't want to lose any additional time for rebuttal, but of course, if Justice has further questions, by all means. Okay, why don't we let you reserve the rest of your time? So, Mr. Woolner, you have the floor. Thank you, Your Honor. Based on the questions that the court has already asked, I think you've absorbed the arguments we've made, so I will try and be extremely brief, and I want to respond to three statements that I think I heard Mr. Bensamakan make a moment ago. First, he said this was a run-of-the-mill expungement matter. Second, he asked a rhetorical question. What was so different about this case? And the third thing, right at the very beginning of his remarks, he began by talking about the genesis of this dispute and how it started as a filing in state court by an entity that was, quote, formed to pursue litigation rights, unquote. As we pointed out in the brief, the identity of the party from whom Mr. Bensamakan's client acquired those litigation rights is relevant here. That asinore, the source of the rights asserted by Sunset, Mr. Bensamakan's partners. And based on the questions the court's asked, I'm confident that you've had an opportunity to review the two different transcripts occupying about a hundred and fifty pages total in the supplemental excerpts, which reflect Judge Russell's view of the conduct by the principals of Secure Capital Partners and of the debtor in the bankruptcy case, Tower Park Properties, which is also represented by Mr. Bensamakan. The fact that the principals of Secure Capital Partners were described by Judge Russell as having abused the legal process beyond recognition over the years is, we suggest, reason to be concerned. The fact that the property here, I mean, this is not in the record, but it was in the newspapers a few years ago in the New York Times and the Wall Street Journal, you saw Secure Capital Partners put this same property on the market for a billion dollars. Now, we don't claim that's what it's worth, and no one is suggesting that there's any kind of mathematical equation for the reasonableness of attorney's fees. But it does seem to me that that is relevant, and it goes to the statement that was in the very first paragraph of Mr. Bensamakan's complaint in the state court, that this was about an extremely unique and I don't know that there's really a lot more that I need to say. The point was made by Mr. Bensamakan that there were no findings, and I think, Judge Gann, you addressed that in your questions to Mr. Bensamakan, pointing out that Judge Russell said he was adopting the statements in our application, which, as you pointed out, set forth our hourly rates, who was performing the services, the services that were performed, and the application explained why we felt we had to perform them. This was a situation where Mr. Bensamakan's client recorded a list pendants it had no right to record because it didn't state a real property claim, as we argued both in this motion and in the companion motion to dismiss. It didn't do any of the things set forth in section 405.22 of the CCP in the order, or at all in some cases, and it filed what appeared to be a false affidavit of service with respect to the notice that we never received and had to find out about this list pendants on our own. If all of that doesn't establish a predicate for the relief Judge Russell granted, I frankly don't know what would, and unless the panel has questions, I'm going to rest. Any questions? I'll just make a remark. I mean, I think part of your showing is that you were, to the extent there wasn't a more difficult effort in expunging this list pendants, it was because of the numerous faults that you found in the process, correct? We had to find out about this on our own, we had to discover it, we had to prove that the proof of service is false. It's funny, to sort of throw in another sports analogy, since the appellant's lawyer did, I'm reminded of the time Muhammad Ali once remarked how much more difficult it was to box a clumsy boxer than a good one, because you don't know what the clumsy one's gonna do. It strikes me that's analogous here, that what you have was a situation where there were so many defects, and with your, you know, with the background of this, and the stakes, and the long history of litigation, you believed it was reasonable to take every step you took to expunge the list pendants, and Judge Russell apparently agreed with you, because he took your position, and having read the papers, overruled the objection. Your Honor, that observation makes me realize there's one more point I should have made. It was made in the reply brief, and Mr. Bensamekin mentioned today, that we were prepared to have a young lawyer make his first oral argument on this motion, and that is absolutely correct. We were, he is a former bankruptcy clerk, but unlike Mr. Bensamekin, who seems to view that as a, as a suggestion that the motion wasn't worthy, what I will tell you is that was a statement of, that was a tribute to the respect that I had, and the confidence the client had in this young lawyer in preparing a motion we absolutely did care about. It had to be done right, and it had to be done decisively, and I thought he was ready to do it. So let me just add that. One other, one other piece to this was that while they didn't oppose it, and they took a number of actions they thought would evidence their willingness to walk away, they didn't do those correctly under the statute either, which required additional work on your behalf to prepare to address those issues if they become, became relevant at the argument. Correct Your Honor, that withdrawal, actually there were two withdrawals, plus a withdrawal of the first withdrawal that happened on July 1st, six days before the scheduled hearing. So we had to figure out what the heck is going on here, and what are we going to tell Judge Russell about these? Thank you, Your Honors. Thank you. Mr. Ben Samekin, back to you for four minutes and some number of seconds. There we go. I'm sorry, you're muted. You have to turn your microphone on. Thank you. Okay, there we go. Sorry about that. Your Honor, the only point I'd want to just make is that there's no specific history in these related cases on this mountain that's not Sunset Coast. There's never been a finding of alter ego or anything of the like. It is inherently improper and unfair to lump Sunset into this group if that's really something that's being considered without those specific findings. So other than that at this point, the appellant will rest. All right, any further questions from the panel? No, thank you. Okay, very good. Thank you very much for both of your arguments. Appreciate it. The matter is submitted. Thank you.
judges: Faris, Lafferty, Gan